on the call of the docket today is agenda number three, case number 110338, People, State of Illinois v. Gutman, G-U-T-M-A-N, Gutman. Counsel? Good morning, and may it please the courts. Assistant Attorney General Michael Blankenheim on behalf of the People. The appellate court in this case reversed the defendant's conviction for money laundering after determining that the undefined statutory term proceeds refers only to the net profits generated by a criminal act. The court further determined that, despite failing to raise an objection to this issue in the trial court, defendant was entitled to relief under the plain error rule. Both of these determinations were erroneous, and this court should reverse the appellate court's judgment for either of two independent reasons. First, although undefined by the money laundering statute, proceeds ordinarily means the gross receipts generated by a criminal act. That's the meaning of the term, the primary dictionary definition of that term, the only definition provided by Black's Law Dictionary, and the meaning that term has been given in substantively related provisions of Illinois law. Second, if this court disagrees, defendant was not entitled to relief under the plain error rule because she failed to demonstrate that the trial court's reliance on the gross receipts evidence to prove the money laundering charge was a clear or obvious error. Indeed, the defendant's argument depends on a finding of ambiguity regarding the meaning of proceeds. And if the term is ambiguous, the trial court's reliance on one of those reasonable meanings cannot have been clearly or obviously wrong. Turning to the primary issue in this case, the interpretation of the statutory term proceeds, this court should hold that that term refers not only to the net profits generated by a criminal act, but also to the gross receipts or the total amount generated by that crime. The general usage dictionaries lead with the gross receipts definition for proceeds. Black's Law Dictionary provides only one definition. And as we've explained in our brief, the General Assembly has demonstrated that when it legislates in areas that are similar to the money laundering statute, it consistently gives that term its gross receipts meaning. The United States versus Santos gives a different definition. That's correct. The state, the first time I can remember, the state did not come in supporting lock, stop, lock, step doctrine that we should follow the federal case. We are asking the court to follow Santos. But we believe that the appellate court misread that decision. The opinions in Santos were split with four justices agreeing that the term was ambiguous and had to be construed in a defendant's favor, four justices believing that the term was not ambiguous when read in the context of the money laundering statute, and one justice concurring in the judgment concluding essentially that the meaning of the term proceeds varies depending on the facts of a given case. What about the legislative history of the state's legislation? Doesn't it indicate that the General Assembly wanted to model our statute after the federal version? I believe that's correct, that the statute is modeled after the federal statute. But it was just misinterpreted here. I'm sorry? But it was just misinterpreted here. The statute was misinterpreted by the appellate court. And there's no need to get to the legislative history unless this court first finds that the term is ambiguous. As we've explained in our brief, not only do the leading dictionary definitions support the gross receipts meaning, but the way the term proceeds has been used in substantively related criminal statutes tends to negate any contention that proceeds is ambiguous. By the time the money laundering statute was passed, there were six criminal statutes dealing with forfeiture provisions and fine provisions where the General Assembly has used the terms profits and proceeds side by side. Now, in those statutes, proceeds must be given its gross receipts meaning. Otherwise, the term profits in those statutes would be truly superfluous. And it's appropriate to consider those statutes because of the substantive relationships that they share with the money laundering statute. The money laundering statute is about eliminating the value that the fruits of criminal activity have. And it does it in two ways, by penalizing financial transactions that take criminally generated property and use those proceeds to carry on further criminal activity. It also penalizes transactions that are designed to remove proceeds from the business and conceal the fact that they are criminally generated, thereby enabling criminals to use those funds for their own personal benefit. The forfeiture statutes work toward a similar objective by reducing the financial incentive to engage in crime in the first place. By providing that a convicted defendant will forfeit any profits or proceeds generated by his criminal act, the General Assembly has taken away the financial incentive to participate in that illegal activity. And similarly, in the drug fine statutes, the General Assembly has turned a criminal's assets into liabilities. Those statutes provide that a fine imposed on a defendant should be set with regard to the amount of profits or proceeds generated by the underlying crime. So the more crime you engage in and the more profits and proceeds you generate, the greater your fine is going to be. And so given the six criminal statutes that were in effect at the time the money laundering statute was passed, and the seven that were passed subsequently, all of which use the terms profits and proceeds side by side, this Court can find that the General Assembly understands the word proceeds not to cover only net profits, but also the gross receipts or the total amount generated by the underlying crime. And because several of those statutes were enacted before the money laundering statute, it's a compelling inference to draw that when the General Assembly used only the term proceeds in the money laundering statute, it intended that term to mean gross receipts. And the second consideration for giving proceeds its gross receipts meanings are considering the consequences of adopting the net profits interpretation that the defendant is advocating for in this case and that the appellate court adopted. We know from the text of the money laundering statute that the General Assembly was concerned with financial transactions that promote the carrying on of illegal activity and financial transactions that are designed to conceal the fact that the property at issue in the transactions is in fact criminally generated. And both of those objectives are furthered by affording proceeds its ordinary gross receipts meaning. The proceeds of a crime, even if they don't represent profits, are useful to criminals. They can be used to pay the expenses of the business, they can be leveraged into further criminal activity, and they can be removed from the business and enjoyed by the criminal for his own personal benefit. And a related consideration is the difficulties in proving what constitutes a profit or a net profit with regard to a criminal enterprise. The terms profits and net income only make sense when or after the application of general accounting rules. But as the dissenting justices in Santos persuasively demonstrated, criminal organizations don't ordinarily keep records of their criminal businesses. And indeed, adopting the net profits approach, which requires proof of business expenses and net profits, provides an incentive for criminals to falsify or not even keep records. And for these reasons, the court should find that proceeds as used in the money laundering statute refers to the gross receipts of criminal activity. If this court disagrees, the appellate court's judgment should still be reversed because that court misapplied the plain error rule. But the defendant has failed to meet her burden at the second step of the plain error rule, which is to show that the trial court's rationale for adopting the net profits approach was that proceeds was hopelessly ambiguous and that the only way to construe that term was to apply the rule of lenity. But if proceeds is ambiguous and is susceptible of two reasonable interpretations, the trial court could not have committed a clear or obvious error in applying one of those interpretations. And if the court has no questions at this time, I will save the remainder of my comments for rebuttal. Thank you. The indictment in this case alleged that Guttman knowingly engaged in a series of financial transactions in criminally derived property consisting of theft or vendor fraud from the state. The issue of process or proceeds, as Justice Thomas clearly indicated, was decided by United States v. Santos. And unlike what the state would like to argue, not only the plurality, but the Supreme Court has decided that net proceeds are not the right definition for the word proceeds. And then when you look at Illinois... Let's look at that a little bit, though. Didn't Justice Stevens agree that the dissent was right in most cases and only voted with the majority to avoid what he called a perverse result in a particular case? I agree with your statement to a certain degree, because I think Justice Stevens was not here nor there. He stated his rule of law based on something that the dissent, Justice Alito, and the dissent disagreed with, and he said his rule of law with some issues that the plurality disagreed with, because he did say that at some point it could be net receipts and some other statute it could be profits. The dissent said no, it cannot be net receipts ever. The plurality said it is always net receipts. As the court indicates, the Supreme Court indicates, it is a dicta by Judge Stevens, and therefore it should be looked at. Counselors are still free to argue in other cases where the issues are different than what is the definition of proceeds means. Well, what are we to make of the fact, if anything, that Congress immediately after this decision was written in the Supreme Court, and amended the statute to assign a gross receipts definition to proceeds? Well, I think what you are to make of that fact is that Illinois is in agreement with the prior act of Congress, of the United States Congress, and not with the current act of Congress, because the United States, with the Illinois General Assembly, has amended this statute in 2005. In fact, overhauled the entire statute in 2005, and still remained unclear with the word proceeds. They had an opportunity from their prior enactment for forfeiture to add these two words, profits or proceeds, but they have decided and chose not to when they overhauled the entire statute. In fact, they used that word proceeds one more time in that statute without defining it. So what you're saying, as I understand your argument, we have a case where it appears that, if we accept Stevens' words, that in most cases gross receipts should be used as the definition. I think he says that. And then shortly after the opinion, so now you've got five justices on that issue, then Congress, U.S. Congress, decides to make the definition gross receipts. And you say, then, as a result, the Illinois legislature is left with a choice. Do you want the first enactment of Congress or the second? So my question then becomes, are we to believe that our legislature then is perfectly fine with money laundering as long as profit wasn't realized in the underlying criminal transaction? I do, Your Honor. I think that the Illinois Assembly, the General Assembly here, has actually decided that and decided to leave it at proceeds to mean net receipts in situations like we have here. Because they enacted statutes after the Supreme Court, I believe, has changed the statute and still remained intact with this definition or non-definition of the word proceeds. Just because I believe that there are other statutes, and, for example, the Fourth Amendment in Illinois is much broader or more defendant-friendly, if I may, than the United States Fourth Amendment. So there are other statutes in Illinois that are construed differently, even though they started similar. Well, explain this to me. How is a professional money launderer, and I believe this was raised by the State, to know if a profit was turned in the underlying criminal transaction? I think just like in the Supreme Court case of Santos, you can show that, and it's not a very difficult process to show or element to show by the State. And that goes to the burden of proof, Your Honor. It goes to showing, it can show by circumstantial evidence that this professional money launderer has been doing it over time. He knows whether or not he or she knows whether or not they, let's say it's a car wash operation. You would agree, though, that it would make it difficult to prove? I would agree it will make it more difficult to prove, but this is not the... And that's what the legislature had in mind. Our legislature had in mind to make it more difficult to prove this against money launderers. Well, they may not have it more difficult, but they also certainly did not intend to enact a statute that has the same exact results or more powerful results than, for example, the theft or the vendor fraud in our case. Because under the merger problem that we have, any theft in a situation like ours, would include money launderers. Every person, such as the defendant in this case, would have automatically been also guilty of money laundering. And I don't think that our legislature intended on doing something like that at all. So just putting on a small or additional burden on the State is not something that we should interpret, as the legislature did not want to do it. I think more importantly, they didn't want to create two statutes that have the exact same results. Before we get to legislative intent, isn't our first job to determine if the language is plain? Correct, Your Honor. And what's incorrect about going to Black's Law Dictionary and looking at the common understood meaning of proceeds? Well, I think Black's Law Dictionary is not really the common law definition. It's more of a legal definition, if anything. But we have all other, except for Black Law Dictionary, all other dictionaries. And I think that DeSanto's decision makes it very clear, even through the dissent. Justice Alito in the dissent says that by opening a dictionary, the term proceeds is still ambiguous. You cannot define the term proceeds simply looking at the definition from the dictionary. So I think counsel's argument is to... So proceeds is inherently ambiguous? Is that what you're telling us? I think if you open the dictionary, it's inherently ambiguous. That's correct. And I think it's also ambiguous here in Illinois because the fact that Congress, at least four, they use at least four different ways when they use the word proceeds. They use the word proceeds only in this money laundering statute. All other statutes are profits or proceeds or profits or other proceeds or money, any monies, profits or proceeds. If Congress wanted to include the whole, everything, they would have simply used something that they used in the past, which is profits or proceeds. Back to your point just quickly on what I think they talk about in Santos is the merger problem, right? If the definition is gross receipts, then money laundering overlaps with many of the underlying criminal offenses. Would you agree with the state's argument that in this case, however, that none of the acts of money laundering here were also elements of theft or vendor fraud, the predicate offenses for which the defendant was convicted? I disagree. Now, the question before you is what is proceeds, not what is promotion or concealment. And I disagree because the operation here was an operation of a taxi cab transporting people from place A to place B, and UPT was giving vouchers to be paid by the state of Illinois that are either inflated or completely false, had different mileage on them and such. Now, they did have, and the state in their statement of facts in the trial, they did have a lot of expenses. They had 32 or 33 cars at least. They had individuals driving these cars. They had a place of business. They had plenty of expenses to pay out prior to. In fact, not only that, your honors, Erie Gutman had to lend money to the corporation numerous times. I think the judge, the trial judge made it very clear in his ruling where he said that money was going back and forth because the operation was not profitable or possibly not profitable. We don't have any evidence or there was no evidence to show that. And so I think that this is the case that is very similar to Santos because there has been a lot of expenses. So it's not money laundering if it's not a profitable operation? In our situation, it is not money laundering or at least you need to show that there was some profit made because as the testimony at trial here was very specific, Ms. Gutman did put in her own money into the operation. And the just under $3 million that came into UPT not necessarily came in and there's no evidence to show otherwise, not necessarily came in from that operation alone because there was testimony that other operations such as UPT existed in the past by these two individuals, Lubinsky and Gutman, and money from the state of Illinois does not come or was not paid out at least four to eight months. So there may have been money that was properly paid through other operation into UPT just because they changed the name of the corporation. And therefore, it's not money laundering at all. May I ask you a question about the plain error? Your opponent, generally this court has said that we first look to determine whether or not there's error. And then we look to see if it's reversible error, the nature of the error, is it reversible error or is it a type of error that might be subject to a plain error analysis? The state is arguing here that there's another concept that we need to deal with and that's whether or not the error that's being assigned is clear. Now, you've indicated that you believe this language is inherently ambiguous. We certainly discussed at length that the United States Supreme Court has struggled somewhat with the meaning of this term. So just in terms of the plain error analysis, do you believe that we also have to consider this idea of whether the error is clear? And if we do have to deal with that issue, how can this issue be clear, this error be clear if in fact the statute is inherently ambiguous? I think there's a couple of components to your question, Your Honor. So if I may take my time for a minute. I think that there is error. And if you side on the same way that the Supreme Court case on Santa's sided and decided that proceeds means net in our situation in this circumstance, then whether or not there needs to be an additional burden to show that it was clear or obvious error. I think in this situation, first of all, I think that there was a showing. My kids are in court here and like I always tell them, when you do your homework, you've got to show the work that you have done. Unfortunately, maybe that's not the case. But if you do your homework, you've got to show the work that you have done. And I think that the Supreme Court did not show the work that they have done to reach that decision. But they did determine that there was error and a fundamental error. And the reason why they determined that there was clear error or clear and obvious error is because the evidence, again, the evidence that was shown at trial was very confusing. If it was clear error, why was there no objection at the trial court level? I was not at the trial court. So you don't know why? No, I don't know why. I picked up the case to do the appeal and I'm here before you now. I think that the error was, especially when you look specifically at the judge's decision at sentencing, the trial judge says that the money was going from Universal to Mr. Tishel's account and checks going to Irene Gutman, hundreds and thousands of dollars, some money coming back and forth. Now, in order to determine whether or not or what classification and what sentence one should get for money laundering, the first determination must be how much money was laundered, if any. I don't think it was laundered. I don't think it was laundered. I don't think it was laundered. I don't think that the judge, based on the determination here in the trial court, even knew it. He received numbers. He received $3 million. He received $170,000 approximately. He received a number of $300,000 or $200,000 initial investment by Irene Gutman. But there was no clear indication at the trial court level by the state, because it's their burden, to show what was the money laundering, how much money was there. It could have been under the $100,000. But of course there was no objection. There was no objection. So now we move on to how we review this. Let's assume we agree with you that there was error. So I think, are you arguing that this kind of error is the type of error that is so serious that there must be an automatic reversal? Is that what you're saying? Is that what you're saying? We may come to a decision by the meaning of this term. But there was a question about it back at the trial level, the net does not rise to the level of plain error. Is that the correct analysis? Well, I think the correct analysis is to look at the word proceeds before it goes into net or profit. And whether or not the judge in this case had made a clear error, even by whether you take the state position or our position, before you determine whether it's a fundamental error, whether or not the judge has made an error by applying the actual word proceeds, whether it's net proceeds or gross. But you'd agree that it's a tricky question, right? It is a tricky question. So I think let's just kind of shorten it. It's a tricky question, right? Yes, it is. Okay. Well, if it wasn't raised in the trial court and it's a tricky question, does it rise to the level of plain error? I believe so. Because, again, I think that you need to look at the tricky question before it becomes tricky, which is, whichever way you look at proceeds, the judge made the error. He made the plain error. I think in Heron, in People v. Heron, the definition is only net or gross. He made the error that is fundamental. Piotrowski, I think, adds the word plain error before it analyzes if it's a fundamental error. If you look at the way the judge analyzed just the word proceeds, just to determine how much money, if at all, was money laundered or laundered, he made the mistake, whether it's net or gross, he made a mistake because he never reached that decision. That is, he didn't say, I find, for example, that there was a gross amount of $2 million. And it's also very telling in the way that he reduced the restitution. He didn't know himself how much money was taken or not taken. Restitution is a certain amount. It's not an arbitrary amount that you pluck out of the air. When you order somebody to give back money, you order them to give a certain amount that was taken or laundered or not taken. And as such, you don't pluck it out of the air and say, okay, she should pay $2 million and then reduce it to $1.2 million. Regardless of what the judge said or didn't say, you do agree, we get to that issue only if we agree with you on the net proceeds definition argument, right? Yes. And on this merger, the overlap, tell me what's wrong with Alito's approach. He didn't see it as a bigger problem than Justice Scalia, Justice Alito. Justice Alito didn't see it as a big problem. He saw it as a sentencing remedy would fix that problem. Is that right? He did see it as a sentencing remedy. However, when you have a sentencing remedy, you first have to look, in Illinois at least, at the classification, whether it's a Class I, Class II, or Class III felony or less. And therefore, in Illinois, unlike the federal statute where we have the federal sentencing guideline, we don't have that in Illinois. We have a classification system. And this, the way Ms. Gutman was found guilty, it would have been a Class I rather than a Class II or less.  Thank you, counsel. Thank you. I'd like to go back to Justice Freeman's question about Santos and lockstep. The lockstep doctrine is only for constitutional adjudication. And in this case, we're asking the court to look to Illinois statutes to determine what the term proceeds means. And the key distinction between Santos and this case is that in Santos, the Supreme Court was unable to find a common meaning for the term proceeds in the federal criminal code. In fact, there were at least one and maybe two statutes that defined proceeds to mean net profits. That's not the case in Illinois law. To go to the questions about the merger problem in this case and the people's supposed failure to prove how much money was laundered in this case, the evidence shows that more than $300,000 was laundered between UPT's corporate account, a co-defendant's personal account, and ultimately to the defendant's account. And in this case, there's no issue of the defendant's sentence being increased solely because of the money laundering charge. The defendant was charged with theft, vendor fraud, and money laundering, all in excess of $100,000. And so the penalties for those offenses are the same. And she received concurrent 66-month term sentences on those offenses. So there's no issue of a perverse result in this case solely by applying the money laundering statute. We also agree that Black's Law Dictionary provides an appropriate source. And we've cited this Court's decision in Vancouver v. Catrus at page 23 of our opening brief, where this Court looked to Black's Law for the meaning of an undefined term. And finally, on the plain error questions, this Court recognized in Peeble v. Piatkowski that the similarities between this Court's plain error rule and the federal plain error rule in both rules require a finding that the error was clear or obvious. And we cited Piatkowski and Peeble v. Givens in our reply brief. If there's no further questions at this time, we ask you to reverse the appellate court's judgment. Thank you.